**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WEIFANG TENGYI JEWELRY TRADING CO., LTD | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | Judge |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | ) ) ) ) | Magistrate Judge |
| Defendant. | ) ) ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, Weifang Tengyi Jewelry Trading Co., Ltd., ("Weifang" or "Plaintiff") by and through its counsel, hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A, attached hereto, (collectively, "Defendants") and for its Complaint hereby alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331 and the Federal Copyright Act, 17 U.S.C. § 101, et seq. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

1

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Names/ Aliases in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing infringing versions of Plaintiff's federally registered ULOVEIDO trademark and copyrights.

3.     Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's federally registered intellectual property. As a result, each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

4.     Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## INTRODUCTION

5.     This action has been filed by Plaintiff to combat online e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's ULOVEIDO trademark, which is covered by U.S.

Trademark Registration No. 5,017,523 ("ULOVEIDO"). The ULOVEIDO Registration is valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificate for the ULOVEIDO mark is attached hereto as Exhibit A.

6. On January 3, 2023, Plaintiff registered a series of photographs with the United States Copyright Office and received Registration Nos. VA 0002-334-790, VA 0002-334-791, VA 0002-334-792 ("ULOVEIDO Works"). True and correct copies of the federal registration records for the ULOVEIDO Works, with relevant samples, are attached hereto as Exhibit B, C, and D, respectively.

6. The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff products, while selling inferior imitations of Plaintiff's products. These Defendant Internet Stores often include in their offers for sale either identical or substantially similar images registered in the ULOVEIDO Works and the Mark. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.

7. Plaintiff is forced to file this action to combat Defendants' copyright infringement of the ULOVEIDO Works and trademark infringement and/or counterfeiting of Plaintiff's registered ULOVEIDO trademark as well as to protect unknowing consumers from purchasing unauthorized ULOVEIDO products over the internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable

copyrights and the ULOVEIDO trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

8.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each defendant has offered to sell and ship infringing products into this Judicial District.

### THE PLAINTIFF

9.     Plaintiff Weifang Tengyi Jewelry Trading Co., Ltd. is a Limited Company having its principal place of business at No. 360, Dongfeng East St., Kuiwen, Weifang, Shandong, China 261000.

10.     Plaintiff is engaged in the business of distributing and retailing precious metal; Bracelets; Earrings; Jade; Jewellery; Jewellery cases; Jewelry ornaments; Necklaces; Rings; Wristwatches and other items throughout the world, including within the Northern District of Illinois District (collectively, the "Uloveido Products") under Class 14 of its federally registered ULOVEIDO trademark identified in Paragraph 3, above.

11.     Plaintiff is the owner of all rights, title and interest in and to the ULOVEIDO mark, U.S. Trademark Registration No. 5,017,523. The registration is valid, subsisting, unrevoked and uncancelled. The registration for the ULOVEIDO mark constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the ULOVEIDO mark pursuant to 15 U.S.C. § 1057(b).

12.     Plaintiff's ULOVEIDO mark is a recognized symbol of high-quality jewelry and accessories. As detailed below, Plaintiff has been using the mark since 2013, in connection with

the advertising and sale of Plaintiff's Products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

13.     Plaintiff is the owner of all rights, title and interest in and to the ULOVEIDO Works, U.S. Copyright Registration No.s VA 0002-334-790, VA 0002-334-791, VA 0002-334-792. The registrations are valid and subsisting. The registrations for the copyright images constitute *prima facie* evidence of validity and of Plaintiff's exclusive right to use the registered images pursuant to 17 U.S.C. §410.

14.     Plaintiff has been using the ULOVEIDO Works since 2016.

15.     The ULOVEIDO mark and ULOVEIDO Works have been widely promoted, both in the United States and throughout the world. Consumers, potential consumers and other members of the public recognize that Plaintiff's Products sold in the United States originate exclusively with Plaintiff.

16.     As of the date of this filing, Plaintiff's Products are sold around the globe, in the United States, Russia, UK, Germany, Spain, Canada, Australia, France, Ukraine, Brazil and Israel.

17.     Plaintiff maintains quality control standards for all products bearing the ULOVEIDO mark and ULOVEIDO Works. Genuine products bearing the ULOVEIDO mark and ULOVEIDO Works are distributed through Plaintiff's internet stores on the Amazon, Wish and eBay platforms. Sales of Plaintiff's ULOVEIDO products via Plaintiff's internet stores represent the majority of Plaintiff's business. The internet stores feature proprietary content, images and designs exclusive to Plaintiff.

18.     Plaintiff's ULOVEIDO mark and ULOVEIDO Works are  highly visible and distinctive worldwide symbols of excellence in quality and uniquely associated with Plaintiff

and, as a result, Plaintiff's ULOVEIDO Products have generated millions of dollars in revenue since the ULOVEIDO mark's first use in commerce.

19.     The ULOVEIDO mark has never been assigned or licensed to any of the Defendants in this matter.

20.     The ULOVEIDO Works have never been assigned or licensed to any of the Defendants in this matter.

21.     Plaintiff's ULOVEIDO mark and ULOVEIDO Works are symbols of Plaintiff's quality, reputation and goodwill and have never been abandoned.

22.     Further, Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the ULOVEIDO mark and ULOVEIDO Works.

**THE DEFENDANTS**

23.     Plaintiff is currently unaware of the identity and/or location of Defendants. However, on information and belief, Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores identified in Schedule A, filed separately under seal. Each Defendant targets the United States, including Illinois, and has offered to sell and/or has sold and/or continues to sell infringing and possibly counterfeit Uloveido products ("Infringing Products") to consumers within the United States, including Illinois and in this Judicial District.

24.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores including, and possibly not limited to, those listed in Schedule A

attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

25.     This lack of precise information notwithstanding, it is well established that e-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* Exhibit E, Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

26.     Further, third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *See* Exhibit F, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as Exhibit G, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against

the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. *See* Exhibit G at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. *See* Exhibit G at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *See* Exhibit F at 186–187.

27.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading and/or incomplete information to Internet based e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Defendant Internet Stores to prevent discovery of their true identities and the scope of their e-commerce operation.

28.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling the Infringing Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting and infringement operation, and to avoid being shut down.

29.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating as the Defendant Internet Stores often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Defendant Internet Stores they operate or use. E-commerce stores operating as the Defendant Internet Stores, or other currently unknown aliases, include other notable common features such as use of the same registration patterns,

accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Infringing Products offered for sale by the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

30.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com and WeChat chat rooms and through websites such as sellerdefense.cn regarding tactics for operating multiple accounts, evading detection, pending litigation and potential new lawsuits.

31.     Infringers/counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

32.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell the Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the ULOVEIDO Trademark in

connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and Illinois over the Internet.

33.     In sum, Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, Schedule A shows the use of store names by the Defendant Internet Stores that employ no normal business nomenclature and, rather, have the appearance of being fabricated.  For example, even if a company appears to be legitimate, online research shows that there is no known address for the company. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine Plaintiff's Products while they are actually selling inferior imitations of Plaintiff's Products.

34.     Defendants' unauthorized use of the ULOVEIDO Trademark and ULOVEIDO Works in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## THE DEFENDANTS' UNLAWFUL CONDUCT

35.     The success of Plaintiff's ULOVEIDO brand has resulted in its counterfeiting and infringement. Plaintiff has identified numerous domain names linked to marketplace listings on platforms such as eBay and Wish, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit and/or infringing ULOVEIDO products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Internet Stores.

36.    Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine ULOVEIDO products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from that of an authorized retailer. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and/or PayPal® logos. Plaintiff has not licensed or authorized Defendants to use its ULOVEIDO trademark and copyrights and none of the Defendants are authorized retailers of genuine ULOVEIDO products or have authority to display the ULOVEIDO Works.

37.    Upon information and belief, Defendants also deceive unknowing consumers by using the ULOVEIDO trademark and copyrights without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for ULOVEIDO products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine ULOVEIDO products.

38.    Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, to avoid detection, Defendants register Defendant

Internet Stores using names and physical addresses that are incomplete, contain randomly typed letters, or fail to include cities or states. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

39. There are also similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts. In addition, the counterfeit and/or infringing products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit and/or infringing ULOVEIDO products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

40. Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically

ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

41.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, the foreign Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

42.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the ULOVEIDO trademark and copyrights in connection with the advertisement, distribution, offering for sale, and sale of counterfeit and infringing products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has offered to sell counterfeit and/or infringing ULOVEIDO products into the United States, including Illinois.

43.     Defendants' use of the ULOVEIDO trademark and copyrights in connection with the advertising, distribution, offering for sale, and sale of counterfeit products, including the sale of counterfeit and infringing ULOVEIDO products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**
**(Def. No. 8, 10, 11, 13-14, 16-24)**

44. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

45. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the ULOVEIDO trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The ULOVEIDO trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Plaintiff's products provided under the ULOVEIDO trademark.

46. Defendants have sold, offered to sell, marketed, distributed, and advertised, and/or are still selling, offering to sell, marketing, distributing, and advertising products in connection with the ULOVEIDO trademark without Plaintiff's permission.

47. Plaintiff is the exclusive owner of the ULOVEIDO trademark. Plaintiff's United States Registration for the ULOVEIDO trademark (Exhibit A) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the ULOVEIDO trademark and are willfully infringing and intentionally using counterfeits of the ULOVEIDO trademarks. Defendants' willful, intentional and unauthorized use of the ULOVEIDO trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

48. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

14

49.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well known ULOVEIDO trademark.

50.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit ULOVEIDO products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**
**(Def. No. 8, 10, 11, 13-14, 16-24)**

51.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit ULOVEIDO products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit and/or infringing ULOVEIDO products by Plaintiff.

53.     By using the ULOVEIDO trademark in connection with the sale of counterfeit and/or infringing ULOVEIDO products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products.

54.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit ULOVEIDO products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

**COUNT III**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, et seq.)**
**(Def. No. 8, 10, 11, 13-14, 16-24)**

55.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit ULOVEIDO products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine ULOVEIDO products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

57.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

58.      Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**COUNT IV**
**INFRINGEMENT OF COPYRIGHT**
**(17 U.S.C §101 ET SEQ.)**
**(Def. No. 1-7, 9, 12, 15)**

59.     Plaintiff incorporates the allegations of paragraphs 1 through 54 of this Complaint as if fully set forth herein.

60.     Plaintiff has complied in all respects with the Copyright Act of the United States and all other laws governing copyright, and secured the exclusive rights and privileges in and to

the copyright protected images at issue in this action.

61.     Pursuant to 17 U.S.C. § 411 (a), Plaintiff registered its copyrights for its advertising and marketing photographs. The registration for Plaintiff's Works is valid, subsisting, unrevoked and uncancelled.

62.     Defendants directly infringed one or more of Plaintiff's exclusive rights in its federally registered Works under 17 U.S.C. § 106.

63.     Defendants copied, displayed, and distributed Plaintiff's copyright protected Works and/or prepared derivative works based upon Plaintiff's copyright protected Works in violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1), (2) and/or (5).

64.     Defendants' conduct constitutes willful and direct copyright infringement of Plaintiff's copyright protected Works.

65.     Defendants profited from the direct infringement of the exclusive rights of Plaintiff in the Works at issue in this case under the Copyright Act.

66.     Defendants' infringement is not limited to the copyright infringement listed above. Plaintiff will identify such additional infringement after discovery.

67.     On information and belief, there is a business practice of infringement by Defendants.

68.     On information and belief, defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

69.     Plaintiff has been damaged by the Defendants' acts of copyright infringement.

70.     The harm to Plaintiff is irreparable.

71.     Plaintiff is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

72.     As a result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under its copyrights, Plaintiff is entitled to actual and/or statutory damages, including any profits obtained by Defendants attributable to the infringements, pursuant to 17 U.S.C. §504 for Defendants' infringement of the Works.

73.     Plaintiff is further entitled to recover its reasonable costs and attorneys' fees incurred in prosecuting this action.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, Weifang, prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using the ULOVEIDO Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine ULOVEIDO Product or is not authorized by Plaintiff to be sold in connection with the ULOVEIDO Mark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine ULOVEIDO Product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the ULOVEIDO Mark;

c. using the ULOVEIDO Works in marketing, advertising, soliciting, or displaying, derivative or directly, which is not directly authorized by Plaintiff;

d. further infringing on the ULOVEIDO Works;

d. committing any acts calculated to cause consumers to believe that Defendants' Infringing ULOVEIDO Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

e. further infringing the ULOVEIDO Mark and damaging Plaintiff's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the ULOVEIDO Mark, or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores or other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear or display the ULOVEIDO Mark;

h. operating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear or display the ULOVEIDO Mark and Works;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, eBay, Wish, Joom, AliExpress, Alibaba, Wanelo, Bonanza, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the ULOVEIDO Mark;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods using without authorization the ULOVEIDO Mark;

c. disable and cease providing services to engage in the advertisements using the ULOVEIDO Works or derivative works thereof; and

d. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the ULOVEIDO Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the ULOVEIDO Mark;

5) That Defendants account for all profits and damages resulting from Defendants' copyright infringement, or statutory damages, at Plaintiff's election, for all infringements involved in the action, with respect to any one work, for which any one defendant is liable individually, or for which defendants are liable jointly and severally with another, in a sum of not less than $750 or more than $30,000 as the Court considers just pursuant to 17 U.S.C. §504(c)(1), or to the extent the Court finds that infringement was committed willfully, an award

of statutory damages to a sum of not more than $150,000 per violation, pursuant to 17 U.S.C. §504(c)(2);

6) That Plaintiff be awarded its reasonable attorneys' fees and costs as available under 15 U.S.C. § 1117, and other applicable law;

7) Plaintiff demands a trial by jury;

8) Any and all other relief that this Court deems just and proper.

Respectfully submitted this 14th day of December, 2023,

<u>/s/ Lydia Pittaway</u>
Bar No. 0044790
Ford Banister LLC
305 Broadway - Floor 7
New York, NY 10007
Telephone: 212-500-3268
Email: lpittaway@fordbanister.com
*Attorney for Plaintiff*